**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM and TISSUEGEN, INC.,** | **CASE NO. 1:17-cv-00942** |
| *Plaintiffs,* | **JURY TRIAL DEMANDED** |
| **MEDTRONIC, INC. and TYRX, INC.,** | |
| *Defendants.* | |

## <u>PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS AND, ALTERNATIVELY, OPPOSED MOTION TO STAY AND FOR DISCOVERY REGARDING DEFENDANTS' MOTION TO TRANSFER VENUE</u>

## TABLE OF CONTENTS

I.  SUMMARY OF RESPONSE AND MOTION ..................................................... 1

II.  ARGUMENT ............................................................................................... 1

    A.  The Board's Sovereign Status Controls Venue in This Action. ...................... 1

    B.  Plaintiffs Properly Laid Venue in This Court as to Medtronic, Inc. ............... 5

        1.  *Sufficient venue facts are undisputed to hold venue in this district* ........................ 5

        2.  *Medtronic's San Antonio office meets all In re Cray requirements for venue.* .......... 8

    C.  Defendants Failed to Show Transfer Furthers the Interests of Justice. .......... 13

III.  ALTERNATIVELY, PLAINTIFFS MOVE FOR VENUE DISCOVERY ............ 15

IV.  CONCLUSION ....................................................................................... 16

# TABLE OF AUTHORITIES

## CASES:

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*,
   134 S.Ct. 568 (2013) ............................................................................................... 13

*College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*,
   527 U.S. 666 (1999) ............................................................................................. 4, 5

*Edelman v. Jordan*,
   415 U.S. 651 (1974) .................................................................................................. 4

*Fed. Maritime Comm'n v. S. Caro. Ports Auth.*,
   535 U.S. 743 (2003) .................................................................................................. 4

*Gunn v. Minton*,
   568 U.S. 251 (2013) .................................................................................................. 3

*Herman v. Cataphora, Inc.*,
   730 F.3d 460 (5th Cir. 2013) ................................................................................. 14

*Hess v. Port Authority Trans–Hudson Corp.*,
   513 U.S. 30 (1994) .................................................................................................... 2

*In re Ayers*,
   123 U.S. 443 (1887) .................................................................................................. 2

*In re Cordis Corp.*,
   769 F.3d 733 (Fed. Cir. 1985) ................................................................................ 9

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) .................................................................... *passim*

*Niazi v. St. Jude Med. S.C., Inc.*,
   Nos. 17-cv-183/184/185/186-jdp, 2017 WL 5159784 (W.D. Wisc. Nov. 7, 2017). ............... 12

*Northern Ins. Co. of N.Y. v. Chatham Cty., Ga.*,
   547 U.S. 189 (2006) .................................................................................................. 2

*Pennhurst State School & Hosp. v. Halderman*,
   465 U.S. 89 (1984) .................................................................................................... 3

*Post Consumer Brands, LLC v. General Mills, Inc.*,
   Case No. 4:17–CV–2471 SNLJ, 2017 WL 4865936 (E.D. Mo. Oct. 27, 2017) ..................... 12

*Regents of the Univ. of Minn. v. Gilead Sci., Inc.*,
   2017 WL 4773150 (D. Minn. Oct. 20, 2017) ........................................................ 12

*Regents of the Univ. of N.M. v. Knight*,
   321 F.3d 1111 (Fed. Cir. 2003)........................................................................ 3

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996) ........................................................................................ 2

*Shelton v. Schwartz*,
   131 F.2d 805 (7th Cir. 1942) ........................................................................ 11

*State ex rel. Tex. Dept. of Transp. v. Precision Solar Controls, Inc.*,
   220 S.W.3d 494 (Tex. 2007)........................................................................... 2

*State v. $435,000.00*,
   842 S.W.2d 642 (Tex. 1992) ......................................................................... 2

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ........................................................................ 5, 9, 10

*Tegic Comm'ns, Corp. v. Board of Regents of Univ. of Tex. Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006)................................................................. 1-2, 3

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)..................................................................................... 13

*Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*,
   382 F.3d 1324 (Fed. Cir. 2004)....................................................................... 2

## STATUTES:

28 U.S.C. § 1338(a) ............................................................................................... 3
28 U.S.C. § 1400(b) ................................................................................... 5, 8, 9, 13
28 U.S.C. § 1406........................................................................................... 13, 16
Tex. Educ. Code § 61.003 ...................................................................................... 1
Tex. Gov't Code § 441.101(3)................................................................................. 1

## RULES:

Fed. R. Civ. P. 12 ............................................................................................. 2, 5
Fed. R. Evid. 201 ............................................................................................... 12

Plaintiffs BOARD OF REGENTS, THE UNIVERSITY OF TEXAS SYSTEM ("the Board" or "BORUTS") and TISSUEGEN, INC. ("TissueGen") (collectively, "Plaintiffs") hereby respond to Defendants MEDTRONIC, INC. ("Medtronic") and TYRX, INC.'s ("Tyrx") motion to dismiss [Dkt. 20] (the "Dismissal Motion"). In the alternative, BORUTS seek a stay of the Court's consideration of the Dismissal Motion to allow Plaintiffs to engage in discovery on the issues Defendants raised. In support of this response and motion for alternative relief, Plaintiffs state as follows:

## I.      SUMMARY OF RESPONSE AND MOTION

The Board is a sovereign. As a sovereign, it is empowered to choose the forum in which it litigates its property rights, including the rights embodied in a United States patent. As long as this Court has personal jurisdiction over Defendants, convenience and other venue considerations cannot overcome the Board's rights to choose the forum for this dispute.

Even if the patent venue statute could restrict the Board's choice of venue as a sovereign, venue is proper in this District.

If the Court has any doubts about either the Board's rights as a sovereign to select this venue or that this venue is proper, the Court should allow venue discovery so that any appeal of this Court's venue decision, by either party, will reach all potential grounds and finally resolve the issue.

## II.     ARGUMENT

## A.      The Board's Sovereign Status Controls Venue in This Action.

The University of Texas System, and its Board of Regents, are arms of the State of Texas. TEX. EDUC. CODE § 61.003; TEX. GOV'T CODE § 441.101(3); *Tegic Comm'ns, Corp. v.*

*Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1344-45 (Fed. Cir. 2006); *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1327–28 (Fed.Cir.2004). As arms of the State of Texas, BORUTS has sovereign immunity because an arm of the state's sovereign immunity is coextensive with the state's own. *Northern Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193 (2006) ("States and arms of the State possess immunity from suits authorized by federal law.").

Sovereign immunity protects two state interests: first, the state's treasury against private lawsuits to which the state has not consented; and second, the state's dignity as a sovereign. *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 48 (1994); *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996). For that reason, "[t]he very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *In re Ayers*, 123 U.S. 443, 505 (1887). That constitutionally enshrined respect means states can pursue relief against persons that have harmed the state within the state's borders. *See e.g., State ex rel. Tex. Dept. of Transp. v. Precision Solar Controls, Inc.*, 220 S.W.3d 494 (Tex. 2007); *State v. $435,000*.00, 842 S.W.2d 642 (Tex. 1992).

Neither Medtronic nor Tyrx claims that Texas lacks personal jurisdiction over it. Because they did not assert lack of personal jurisdiction, both Medtronic and Tyrx have waived that defense and the Court's personal jurisdiction over each Defendant is uncontestable. Fed. R. Civ. P. 12(b), 12(g)(2), 12(h)(1)(A)-(B)(i).

The State of Texas has been harmed by Defendants' patent infringement because the Board owns the patent in suit and has not received royalties for Defendants' use of the patented inventions. *See generally,* Dkt. 1. The State's own courts cannot hear a patent

2

infringement case, that is why the case is here. 28 U.S.C. § 1338(a). Defendants' Dismissal Motion asks this Court to abrogate the State of Texas's authority to have its claims adjudicated within Texas. A generally applicable venue statute, whether specific to certain causes of action or not, should not preempt the state's right to have its causes of action heard within its borders. Instead, the Supreme Court has held "we recognized a century ago, [t]he Federal courts have exclusive jurisdiction of all cases arising under the patent laws, but not of all questions in which a patent may be the subject-matter of the controversy." *Gunn v. Minton*, 568 U.S. 251, 264 (2013). Venue is an issue where a state's sovereignty trumps federal venue rules that apply to non-sovereigns.

More than 30 years ago, the Supreme Court held that a state's "constitutional interest in immunity encompasses not merely ***whether*** it may be sued, but ***where*** it may be sued." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Even if a state waives sovereign immunity as to compulsory counterclaims when it brings a suit for patent infringement, any such waiver extends only to counterclaims in the same forum—the forum that the ***sovereign chose to hear the dispute***. *See Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1123–24 (Fed. Cir. 2003); *Tegic Communications*, 458 F.3d at 1342-43 (holding that in *Knight* "waiver as to compulsory counterclaims filed by the defending party 'in the same forum' was clear from the state's filing of the suit ***in that forum***") (emphasis added).

Defendants have made no counterclaims to date because they have not answered. If the Court does not apply sovereign immunity to venue in this instance, the Defendants could, after a transfer, bring compulsory counterclaims against the Board in a forum that the

3

Board has neither chosen nor consented to for such claims. [1] The Board chose this forum and no other. That choice must be respected as a fundamental aspect of the Board's and the State of Texas's sovereign immunity. [2] Venue of this dispute cannot be transferred without the Board's consent, which consent has not and will not be given.

Likewise, the Court cannot dismiss this case due to the Board's refusal to consent to a transfer because such dismissal would effectively force the State to abandon engaging in "otherwise lawful activity"—enforcing a duly issued patent—by conditioning such enforcement upon relinquishing its sovereign privilege to obtain redress in its own courts. Such coercive waiver would violate the Board's sovereign immunity because any statute or rule that conditions a sovereign's participation in the patent system on a waiver of a sovereign's immunity violates sovereign immunity. *See College Sav. Bank v. Fla. Prepaid Secondary Ed. Expense Bd.*, 527 U.S. 666. 687 (1999) ("we think where the constitutionally guaranteed protection of the States' sovereign immunity is involved, the point of coercion is automatically passed—and the voluntariness of waiver destroyed—when what is attached to the refusal to waive is the exclusion of the State from otherwise lawful activity"). Medtronic cannot effectively force the Board to waive its immunity from suit in a forum of Medtronic's

---

[1] Nor can Defendants claim that the Board constructively consented to venue in another state by filing this lawsuit or engaging in the patent system because "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *see College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 681 (1999) (quoting same).

[2] *See Fed. Maritime Comm'n v. S. Caro. Ports Auth.*, 535 U.S. 743, 754 (2003) (noting that the Eleventh Amendment's bar against lawsuits against a state brought by a citizen of another state "does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity").

selection as a condition to exercising the Board's lawful right to enforce its duly issued United States patents, and no part of *TC Heartland, LLC v Kraft Foods Group Brands, LLC*[3] affected the holding in *College Saving Bank* that waivers cannot be so coerced.

The State of Texas's sovereign immunity, and its authority to seek redress in its own courts for harm done to the State itself, negates the effects of any venue statutes. Procedural limitations do not (and cannot) abrogate or override those sovereign interests. Defendants have admitted they are subject to personal jurisdiction in this District because they waived their Rule 12(b)(2) defense. The Dismissal Motion must be denied as to both Defendants.

## B.   Plaintiffs Properly Laid Venue in This Court as to Medtronic, Inc.

Even though the patent venue statute cannot override the Board's sovereign right to choose its forum, even if the Court finds that the venue statute applies, venue is proper in this District.

### 1.   Sufficient venue facts are undisputed to hold venue in this district.

The patent venue statute, 28 U.S.C. § 1400(b), states "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[4] Thus, there are three requirements for laying venue in a district outside of a

---

[3] 137 S. Ct. 1514 (2017).

[4] This past May, the Supreme Court rejected other interpretations of 28 U.S.C. § 1400(b) and stated unequivocally that a domestic corporation resides only in its state of incorporation for purposes of the patent venue statue. *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514, 1517 (2017). *TC Heartland* only determined the state of residency for the patent venue statute. *Id.* This case does not involve a question of where either Defendant resides—neither is a Texas entity.

defendant's state of incorporation: (1) the defendant must have committed acts of infringement, (2) the defendant has a regular place of business, and (3) the defendant has an established place of business. Defendants here do not challenge the first requirement other than to deny they infringe the patents-in-suit. Dkt. 20 at 6, n. 2.

Medtronic lists San Antonio, Texas as one of Medtronic's United States Regional locations on its website.[5] On that same website, Medtronic also lists no fewer than 41 job openings for *Medtronic* employment in San Antonio, Texas.[6] Medtronic itself admits it has 21 employees who work, on Medtronic business, in the San Antonio facility that Plaintiffs identified in their Complaint. Dkt. 20-2 at ¶ 29.

Medtronic openly holds itself out to the public as present in San Antonio because it has a facility on 18302 Talavera Ridge that announces Medtronic's presence with a gigantic sign that says "MEDTRONIC" on the building's façade and another Medtronic sign at the parking lot entrance.[7] Moreover, Medtronic purposefully established that presence in San Antonio *under its own name*.

In 2009, Medtronic publicly announced the establishment of the San Antonio office.[8] In its announcement, Medtronic touted "Medtronic's commitment to the San Antonio Community" reflected in the "two grants it is giving to local healthcare organizations."[9] Medtronic also noted its importance to the Bexar County, Texas, area stating that "because

---

[5] See Declaration of Russell J. DePalma ("DePalma Dec.") at Ex. A.

[6] See Declaration of Russell J. DePalma ("DePalma Dec.") at Ex. B.

[7] DePalma Dec. at Ex. C.

[8] DePalma Dec. at Ex. D.

[9] *Id.*

of the significant economic benefit this facility will make to the local community …
**Medtronic** was awarded a Texas Enterprise Fund (TEF) grant of more than $6 million
dollars [*sic*] from the state, an important factor in **the company's** decision to come to
Texas."[10] Medtronic received grants and incentives from Texas totaling "more than $14
million."[11] In 2014, **Medtronic** repaid penalties from the incentive package Bexar County
offered Medtronic as part of luring the company to San Antonio.[12] Medtronic acknowledges
its established and continuing place of business in the Western District of Texas for
receiving public subsidies and positive public relations, but not to answer lawsuits.

Here is the building and the sign at the parking lot entrance, taken from Google
Maps[13]:



---

[10] *Id.* (emphases added).

[11] *Id.*

[12] DePalma Dec. at Ex. E.

[13] DePalma Dec. at Ex. C.

7



But to this Court, Medtronic argues that it does not have an "established place of business" in the Western District of Texas. Regardless of which Medtronic entity owns or leases the San Antonio facility, ***Medtronic Inc.*** publicly holds itself out as the business located there. Medtronic's denial that it has an established place of business in this district is a corporate shell game.

> *2.* ***Medtronic's San Antonio office meets all*** **In re Cray** ***requirements for venue.***

The Federal Circuit recently elaborated on the proof necessary to find a regular and established place of business in a federal district under 28 U.S.C. § 1400(b). That court held that the first requirement of a "regular and established place of business" is "a physical place in the district" even if it's not a formal office or storefront. *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017). The Medtronic facility at 18302 Talavera Ridge in San Antonio is undisputably a physical place in the Western District of Texas.

The second *Cray* requirement is that the ***place*** must be regular and established. *Id.* at

1362-63. Medtronic's affiants did not discuss the nature of whether the building at 18302 Talavera Ridge, which contains the Medtronic logo on the façade of its top floor, is a regular and established place of Medtronic business because they did not discuss how long it has been held out to the public as a Medtronic office facility, how long any of the 21 employees that work there have done so, nor how long any Medtronic entity has leased the premises. *See generally,* Declaration of Ann Brown, Dkt. 20-1.[14] Medtronic's own corporate announcement and reports from San Antonio media show that Medtronic announced its move to San Antonio in 2009, more than eight years ago.[15] An eight-year presence in this District shows a regular and established place of business.

The third *Cray* requirement is that the regular and established place of business "must be the place of the defendant." *Cray,* 871 F.3d at 1363 (internal quotations omitted). Contrary to Defendants' arguments, whether Medtronic owns or leases the facility is ***not*** outcome determinative. *See* Dkt. 20 at 7-9 (citing cases). The Federal Circuit has expressly rejected the argument that venue is improper merely because the defendant does not own or lease a fixed physical location in a district. *In re Cordis Corp.*, 769 F.3d 733, 736 (Fed. Cir. 1985) (noting the Supreme Court "has yet to address the issue of whether it is necessary to show that a corporate defendant maintains a fixed physical location within a jurisdiction in order to find that it has an established place of business as required by § 1400(b)").[16]

---

[14] Ms. Brown discussed the nature of the two properties that Plaintiffs identified as Medtronic properties in the Complaint. The two other affiants, Ms. Zacharias and Mr. Hanson, respectively discussed the employees employed at the facilities and the relationships between the MiniMed entities, Medtronic, and Tyrx. *See* Dkt. 20-2, 20-3.

[15] DePalma Dec. at Ex. D.

[16] *TC Heartland* did not address that issue; *Cordis* still applies. *See* 137 S.Ct. at 1517-21.

Regardless of the district court cases Medtronic cited in its motion, the Federal Circuit's opinion in *Cray* contradicts Medtronic's implication that the named defendant must own or lease the fixed place of business. Instead*,* the Federal Circuit stated that "the defendant must establish *or ratify* the place of business." *Cray*, 871 F.3d at 1363 (emphasis added). Formal ownership or a lease arrangement in the district is merely a factor in determining whether the defendant has a regular and established place of business. *Id.* The Federal Circuit noted that district courts should also examine if the defendant owns, leases, "or exercises other attributes of possession or control over the place" and can examine marketing or advertisements if they indicate the defendant holds out the location as a place of its business. *Id.*

To determine if the defendant has exercised "other attributes of possession or control," the Federal Circuit held that "a defendant's representations that it has a place of business in the district are relevant to the inquiry." *Id.* That holding is self-evidently sensible—a defendant should be estopped from denying it has an established place of business in a district where commercial real estate displays the corporate name and the company itself issued a press release announcing its acquisition of the office space.[17]

The Federal Circuit has also held that evidence indicating a defendant publicly has represented that it has a place of business in a district include (1) "the defendant lists the alleged place of business on a website"; (2) the defendant lists the place of business "in a telephone or other directory"; or (3) the defendant "places its name on a sign associated with or *on the building itself*." *Id.* at 1363-64 (emphasis added). Medtronic is 3-for-3: it lists

---

[17] DePalma Dec. at Ex. D.

San Antonio, Texas as a Medtronic location on its website[18]; it lists the same location on web-based search tools and in the Yellow Pages for San Antonio[19]; and Medtronic's signage on the San Antonio facility demonstrates that it has planted its corporate flag at that location. *See Shelton v. Schwartz*, 131 F.2d 805, 808 (7th Cir. 1942) (venue proper in district where defendant had office, defendant's name was on office door, defendant's name was in the local telephone directory, and defendant had solicited orders for parent corporation).

No business would attach its logo—the embodiment of its corporate identity and goodwill[20]—on an office park facility in a major city if the business does not intend that the *place* upon which it affixed those valuable corporate symbols be considered a regular and established place of its business. Medtronic's argument to the contrary asks the Court to disbelieve its own "lying eyes."

Medtronic announced in May 2009 that it would establish its presence in San Antonio and issued a press release that said "Medtronic, Inc. announced today that *the company has chosen* San Antonio, Texas as the home of *its* new Diabetes Therapy Management and Education Center."[21] Five years later, *Medtronic* lost more than $775,000 from a financial incentive package San Antonio had pledged because *Medtronic* had not created as many jobs at its San Antonio office as it represented it would at the time

---

[18] DePalma Dec. at Ex. A.

[19] DePalma Dec. at Ex. F.

[20] *See* Logo, www.investopedia.com/terms/l/logo.asp.: "A graphical mark used to identify a company, organization, product or brand." As Investopedia also notes, "[l]ogos have become an integral part of a company's identity, and are used heavily in the marketing of products and services." *Id.*

[21] DePalma Dec. at D (emphases added).

*Medtronic* negotiated the incentive package with San Antonio.[22] That Medtronic has a regular place of business in an established location should be irrefutable regardless of any corporate legerdemain—indeed, Medtronic lists both Medtronic MiniMed, Inc. and MiniMed Distribution Corp. among its subsidiaries on the Medtronic, plc SEC Form 10-K.[23] Medtronic also holds out the San Antonio location as a *Medtronic* facility, not as a business place of Medtronic MiniMed or MiniMed Distribution Corp.[24]

Ultimately, Medtronic's own witness proves that its San Antonio office meets the third *Cray* factor—Ms. Zacharias identified 21 full-time Medtronic employees who work *at* the San Antonio facility.[25] And although Medtronic admits it has nearly two dozen Medtronic-only employees that work at the facility, whether the other San Antonio-based

---

[22] DePalma Dec. at Ex. D, E.

[23] DePalma Dec. at Ex. G. This document is part of a larger public record and the voluminous contents of Medtronic, plc's full 2017 Form 10-K are not reprinted here so as to save resources. The Court should take judicial notice of the full Form 10-K contents under FED. R. EVID. 201(b)(2).

[24] *See* DePalma Dec. at Ex. A.

[25] Contrast this fact with *Niazi v. St. Jude Med. S.C., Inc.*, Nos. 17-cv-183/184/185/186-jdp, 2017 WL 5159784 at *4-5 (W.D. Wisc. Nov. 7, 2017). In *Niazi*, Medtronic obtained a Rule 12(b)(3) dismissal because it had no specific location in the district from which its employees worked and no employees in the district, only sales representatives who would sell in the district. *Id.* Similarly, in *Regents of the Univ. of Minn. v. Gilead Sci., Inc.*, the court found that Gilead did not have an established place of business in Minnesota because its 12 employees were in sales and "the physical location of that sales force is not permanently fixed." No. 16-CV-2915, 2017 WL 4773150 (D. Minn. Oct. 20, 2017). Medtronic identified 21 of its 24 employees in San Antonio who work at Medtronic's established place of business and its local employees are not wholly transient sales representatives, which contrasts with *Post Consumer Brands, LLC v. General Mills, Inc.*, in which General Mills had no employees who worked at the factory in the district that contained "General Mills" signage. Case No. 4:17-CV-2471 SNLJ, 2017 WL 4865936 at *2 (E.D. Mo. Oct. 27, 2017) (noting "No GM or GMSales employees work at the Hannibal plant, which, again, is operated by GMOperations"). The *Post Consumer* court did not, however, analyze whether General Mills had, by corporate activity, ratified that it had a place of business in the Eastern District of Missouri. *Id.*

employees work for more than one Medtronic-related entity remains unanswered in the Defendants' affidavits. Adding the people who already work for Medtronic's business in San Antonio and the 41 "Career Opportunities" with Medtronic *in* San Antonio listed on its website, and applying the factors that the Federal Circuit discussed in *Cray,* the Court should find that Medtronic is using a location in San Antonio as a regular and established place of Medtronic business.

The record is clear. Medtronic's corporate separateness argument is irrelevant. Relying solely upon Medtronic's own documents and admissions, Plaintiffs have shown that this Court is a proper venue for this action under 28 U.S.C. § 1400(b). Medtronic's arguments would allow it to hold itself out to the world, for all purposes but patent venue, as having a regular and established place of business in San Antonio in which some of its employees work and in which its business is transacted. That outcome is absurd. This Court should deny Medtronic's Dismissal Motion.

**C.     Defendants Failed to Show Transfer Furthers the Interests of Justice.**

Defendants cannot obtain a transfer of venue under 28 U.S.C. § 1406 because they failed to prove this Court is the wrong venue for this action. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 134 S.Ct. 568, 578 (2013) (noting § 1406 instructs a court to transfer a case from the "wrong" district). The Supreme Court has held that the "most reasonable interpretation" of the phrase "wrong division or district" in § 1406 "is that a district cannot be 'wrong' if it is one in which the case could have been brought." *Id.* (citing 28 U.S.C. § 1406(a)). A "wrong" district is not one in which "Congress has provided by its venue statutes that the action 'may be brought.'" *Van Dusen v. Barrack,* 376 U.S. 612, 618 (1964); *Atlantic Marine Construction*, 134 S.Ct. at 578 (quoting same).

Defendants also failed to show that a transfer to New Jersey would further the interests of justice. First, Defendants did not discuss how forcing an arm of the State of Texas to litigate in New Jersey is proper, permissible, or even advisable under our Constitutional structure. Second, Defendants only claim that Tyrx is headquartered in New Jersey and claim that venue is therefore proper in New Jersey. Dkt. 20 at 15. But the propriety of another venue, standing alone, does not demonstrate such venue promotes the interests of justice. Defendants failed to produce any proof that witnesses, evidence, or any other convenience or expediency factor favors the District of New Jersey over any other district court. *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).

Instead, Defendants cited only to the Complaint to support their assertion that the products at issue are made in New Jersey, which should raise questions in this Court because Defendants know exactly where they manufacture the accused products and exactly which Medtronic entity performs the fabrication. *See* Dkt. 20 at 15 ("***As alleged in the pleadings***, TYRX is headquartered in New Jersey and all of the products at issue in this case are those of TYRX") (citing Dkt. 1 at ¶ 19; emphasis added). Defendants are dancing around the question. Ultimately, Plaintiffs have only alleged location based upon the best available information they had at the time they filed this lawsuit.[26] Defendants have better knowledge; that they have not shared it with the Court speaks volumes.

---

[26] Tyrx may not actually manufacture at least two accused products. The Food and Drug Administration lists "Medtronic Tyrx, Inc." as the company that makes products within the scope of FDA 510(k) Number K142611 and the products within the scope of FDA 510(k) Number K150291. *See* DePalma Dec. at Ex. H and I, respectively. Defendants have not admitted or denied Plaintiffs' allegations nor identified the actual manufacturer.

### III.   ALTERNATIVELY, PLAINTIFFS MOVE FOR VENUE DISCOVERY

If the Court does not deny the Dismissal Motion, Plaintiffs move that the Court stay consideration of the motion and grant Plaintiffs venue-related discovery. Among the discovery Plaintiffs would need would include historical documents regarding the Medtronic-family entities that initially leased or purchased the San Antonio premises, and transfers within Medtronic, Inc. of ownership or leasehold, corporate documents regarding what entity is responsible for compliance with applicable state and federal regulations relating to the San Antonio premises, corporate documents relating to the employment of the various employees of the Medtronic family of companies that work at the San Antonio premises, corporate records regarding any and all entities that can exercise dominion and control over the San Antonio premises, and corporate documents regarding the business relationship between the Medtronic family of companies operating out of San Antonio, among other discovery.

Tyrx's relationship to Medtronic and the accused products is unclear. Although Tyrx, Inc. is a company that Medtronic claims is a separate corporate entity,[27] its operations and relation to Medtronic is not explained in the Medtronic affidavits submitted to this Court. The infringing products are sold and marketed under the Medtronic name, and designated as Medtronic Tyrx™ Infection Control Products that are part of the Medtronic Infection Control product line.[28] Tyrx's "About Us" page on the Tyrx website (tyrx.com) identifies the "us" as Medtronic Infection Control, which is "an FDA registered certified

---

[27] Dkt. 20-3 at 3-4.
[28] *See* DePalma Dec. at Ex. J.

medical device manufacturer."[29] But the Tyrx trademarks are owned by or assigned to Tyrx, Inc. only, which raises the question of how and why Medtronic can use those marks.[30] Whether Tyrx is the manufacturer, owner, or licensor of the Tyrx-branded products, or simply just a brand-name that Medtronic now controls after Medtronic acquired Tyrx is not clear.

Defendants have not even attempted to show convenience factors that would warrant transferring this case to New Jersey—a state which allegedly is home to Tyrx but not Medtronic. Therefore, their motion under 28 U.S.C. § 1406 lacks support. Given Defendants' venue objections and the lack of clarity regarding Tyrx's ongoing business operations, corporate structure, employees, and use of Medtronic facilities, venue-related discovery will allow Plaintiffs and this Court to determine whether Tyrx's Dismissal Motion lacks merit.

For these reasons, if the Court does not deny Defendants' Motion on either of the grounds stated in Sections I and II above, the Court should grant venue-related discovery and stay its decision on the Dismissal Motion for no less than 90 days, after which time the Court should require the parties to report back to the Court with additional argument regarding the discovery results.

## IV.   CONCLUSION

The Board has sovereign immunity as an arm of the State of Texas and cannot be forced to litigate its claims in the courts of another state. This Court has personal

---

[29] *Id.*

[30] DePalma Dec. at Ex. K (Registered Trademark No. 4736448), L (Registered Trademark No. 3022471).

jurisdiction over both Defendants and BORUTS's sovereign interests outweigh any of Defendants' interests in an allegedly more convenient venue. Moreover, venue is unquestionably proper as to Medtronic, Inc.

If the Court does not deny the Dismissal Motion in its totality, The Board requests the Court allow venue discovery and that the Court stay its decision on the motion for no less than 90 days, after which time the parties should be required to report to the Court regarding the outcome of such discovery.

Dated: November 15, 2017                       Respectfully submitted,

                                               */s/ Alfonso G. Chan*
                                               Michael W. Shore (Texas 18294915)
                                               mshore@shorechan.com
                                               Alfonso G. Chan (Texas 24012408)
                                               achan@shorechan.com
                                               Christopher Evans (Texas 24058901)
                                               cevans@shorechan.com
                                               Ari B. Rafilson (Texas 24060456)
                                               arafilson@shorechan.com
                                               Chijioke E. Offor (Texas 24065840)
                                               coffor@shorechan.com
                                               Paul T. Beeler (Texas 24095432)
                                               pbeeler@shorechan.com

                                               SHORE CHAN DEPUMPO LLP
                                               901 Main Street, Suite 3300
                                               Dallas, Texas 75202
                                               Telephone (214) 593-9110
                                               Facsimile (214) 593-9111

                                               **COUNSEL FOR PLAINTIFFS
                                               BOARD OF REGENTS, THE
                                               UNIVERSITY OF TEXAS SYSTEM
                                               and TISSUEGEN, INC.**

17

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of November, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

Steven E. McConnico
Steve Wingard
Scott Douglas McConnico
303 Colorado Street, Suite 2400
Austin, TX 78701
Tel: 512/495-6300
Fax: 512/495-6399

George C. Lombardi
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: 312/558-5600
Fax: 312/558-5700

and

Nimalka R. Wickramasekera
Shilpa A. Coorg
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071
Tel: 713/651-2600
Fax: 713/651-2700

/s/ *Chijioke E. Offor*
Chijioke E. Offor

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that on the 15th day of November, 2017, I conferred by telephone with George Lombardi, Defendants' counsel, regarding the alternative motion for relief Plaintiffs have filed herein. He stated that Defendants oppose the relief sought.

<u>/s/ *Chijioke E. Offor*</u>
Chijioke E. Offor

19